**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **NICOLE PORTER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 11-1534** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| | *********** | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Nicole Porter ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion and "Corrected" Motion for Summary Judgment (ECF Nos. 17, 19) and Defendant's Motion for Summary Judgment (ECF No. 21).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

(ECF No. 21) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF Nos. 17, 19) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I**

**<u>Background</u>**

Plaintiff was born in 1985, completed the tenth grade, and previously worked as a part-time cashier. R. at 41, 156, 163. She stands five feet and five inches tall and weighs 220 pounds. R. at 159. On February 21, 2008, Plaintiff protectively applied for SSI, alleging disability beginning on November 15, 2007, due to deteriorating joint disease. R. at 39, 103-09, 160. The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 49-50, 61-69. On November 5, 2009, ALJ G.B. Arthur held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 10-35. On November 19, 2009, the ALJ issued a decision finding Plaintiff not disabled since the application date of February 21, 2008. R. at 36-48. Plaintiff sought review of this decision by the Appeals Council and submitted additional evidence. R. at 8-9, 102, 205-13, 249-97. The Appeals Council denied Plaintiff's request for review on April 5, 2011, finding that the additional evidence was "inconsistent with [her] hearing testimony about what [she] could still do in spite of [her] impairments" and did "not provide a basis for changing the [ALJ's] decision." R. at 2. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On June 6, 2011, Plaintiff filed a complaint in this Court seeking review of the ALJ's decision. Upon the parties' consent, Chief Judge Deborah K. Chasanow transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The case

subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Patrick A. Noel, M.D.

On January 3, 2008, Patrick A. Noel, M.D., an orthopedic surgeon, examined Plaintiff, who was complaining of right hip pain. Dr. Noel's examination revealed the following:

> The right leg is shorter than the left side and the right hip has an external rotation attitude. The left hip also has diminished range of motion. X-rays of the hips and pelvis [on January 16, 2008,] showed a fairly normal left hip with the fixating screws in the right femoral neck . . . .

R. at 238, 242.

In a follow-up examination on January 24, 2008, Plaintiff complained of

> daily pain in the right hip even when lying in bed. The pain is [made] worse in cold weather, by shopping and the activities of daily living. She states she is unable to keep a job because of right hip pain. . . . She has difficulty getting in and out of cars. She has no difficulty dressing except for difficulty putting on shoes and reaching down to tie her shoelaces.

R. at 238, 242.

### B.    Rashid M. Khan, M.D.

On April 28, 2008, Plaintiff was examined by Rashid M. Khan, M.D. R. at 214-18. Dr. Khan's impressions were that Plaintiff "has pain in her right hip. She is status post right hip dislocation and underwent surgeries." R. at 216. Dr. Khan's assessment noted that, "[a]t this point, [Plaintiff's] gait is mildly antalgic but satisfactory. She does not require any assistive devices for ambulation. Generally, she will be limited to perform [sic] prolonged standing and walking." R. at 216.

## C. State Agency Medical Consultants

On May 9, 2008, L. Robbins, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 220-27. Dr. Robbins opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. R. at 221. Further, Plaintiff could never balance, but she could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 222. Finally, Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 223-24.

On July 1, 2008, W. Hakkarinen, M.D., another state agency medical consultant, expressed the same opinion about Plaintiff's physical RFC (R. at 229-36), except that she could occasionally balance and stand and/or walk for a total of at least two hours in an eight-hour workday because of hip pain and antalgic gait status post history of right hip fracture/dislocation. R. at 230-31.

## D. Andrew J. Siekanowicz, M.D.

On August 4, 2009, Andrew J. Siekanowicz, M.D., an orthopedic surgeon, examined Plaintiff after she was involved in a motor vehicle accident on July 25, 2009. R. at 245-48. Dr. Siekanowicz's impressions included "right knee contusion sprain with posttraumatic fusion"; "patellofemoral pain syndrome, posttraumatic, right knee"; and "possible internal derangement." R. at 247. Dr. Siekanowicz opined that Plaintiff "is considered disabled for any type of heavy or strenuous activities," and he prescribed Motrin. R. at 247.

In a follow-up examination on August 27, 2009, Plaintiff reported to Dr. Siekanowicz that "functioning is starting to improve in a progressive fashion without any significant increase of the symptoms." R. at 248. Dr. Siekanowicz found that Plaintiff's motion was "overall acceptable on this exam." R. at 248.

## E. Hearing Testimony

### 1. Plaintiff's Testimony

In his decision, the ALJ provided the following summary of Plaintiff's testimony:

> In connection with [Plaintiff's] application, she reported in March 2008 that she needed a hip replacement, and that she had trouble standing, taking long walks, squatting, bending, kneeling, and climb[ing] stairs. She noted that her pain sometimes went down her right leg, and that she had difficulty shaving and washing the lower part of her body, and tying her right shoe. She indicated that she could pay attention all day, that she finished what she started, and that she could follow written (such as a recipe) and spoken instructions. She reportedly sent [sic] outside about twice a week, although she did not drive because she did not have a license. She related that she went shopping for food, shoes, and/or clothes about twice a month. She indicated that she sometimes cooked and did some house chores.

R. at 43; *see* R. at 171-75.

> According to another function report completed in June 2008, [Plaintiff's] hobbies included using the computer, watching television, and talking on the telephone on a daily basis, since she was unable to walk or run. She noted that she could sit for two hours, stand for 30 minutes, walk three blocks before she had to rest for five minutes, and lift about 15 pounds. She reported that she went to her mother's house and her aunt's house once or twice a week. She indicated that she did not handle stress or changes in routine very well. At the hearing, [Plaintiff] testified that the information contained in her previous function reports remained accurate.

R. at 43 (citations omitted); *see* R. at 185-93.

> She also testified that she worked as a cashier on a part-time basis for about two months in early-2008, and again for three months or so beginning in April 2009[;] while the available evidence does not support that the work was at a substantial gainful level[,] the same is considered when examining her activities for the period in question. She indicated that she was unable to work, even on a part-

time basis, primarily due to the pain in her hip and right leg, and because her over-the-counter pain medications (Motrin, Tylenol, and Advil) made her drowsy.

R. at 43.

> [Plaintiff] stated that she had three pins in her hip, and that her hip pain was also causing pain in her back and left leg. She related that during the period under review she could sit for only about 15 to 20 minutes before her hip bothered her and she had to change position, and that she could sit, stand, and/or walk for only an hour or so before she had increased symptoms and had to lie down. She testified that from onset she had to lie down for a total of approximately three hours out of an 8 hour period during the day but this again is not medically supported to the degree of severity or frequency she claims. She said that her back hurt when she bent over, and that she was unable to bend over and touch her toes. She said that she had no future surgery planned because her doctors did not want to perform a hip replacement given her young age. As to why the records did not contain more evidence to support her assertions and perceived limitations[, Plaintiff testified it was] because she was unable to afford any regular treatment.

R. at 44.

> [Plaintiff] related that she injured her right knee in a car accident. She reportedly saw a doctor on two occasions, in August and October 2009, but was no longer receiving any treatment for her knee. She stated that, about a week before the hearing, she was prescribed Motrin, as well as muscle relaxers, after she went to the hospital for chest pain. She also indicated that she was able to drive in that she received her driver's license about six months prior to the hearing.

R. at 44.

### 2. VE Testimony

The VE classified Plaintiff's past work as a cashier as unskilled and light.[3] R. at 30. In a series of hypothetical questions posed by the ALJ with varying degrees of limitations, the VE testified that there were jobs available nationally and locally at the light exertional level, such as

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

counter clerk, office helper, and router, and at the sedentary[4] level, such as document preparer, order clerk, and addresser. R. at 33. According to the VE, however, there would be no work available that would tolerate an employee's beyond moderate limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and completing a normal workday or workweek without an unreasonable length and number of rest periods. R. at 32-34. Further, there would be no work that would tolerate at least two unscheduled breaks of at least an hour at a time during an eight-hour workday. R. at 34-35.

## F.      Post-Hearing Evidence

After the conclusion of the administrative hearing, Plaintiff was examined on December 29, 2009, by Carlos A. Martinez, a physical therapist, who provided a functional capacities evaluation. R. at 207-13. Mr. Martinez found the following:

> The findings of this examination indicate that [Plaintiff] did not demonstrate the functional capabilities to return to work in her previous position or any other position at this time. The findings indicate she is unable to work at the LIGHT or SEDENTARY physical demand categories due to her non-material handling task deficits. Also, due to her inability to sustain the capabilities on the attached Functional Abilities Summary Chart for more than a short period of time, the findings indicate she is not capable of competitive work output at this time. The findings indicate she is unable to sustain the tested capabilities on the attached Functional Abilities Summary Chart over an 8 hour day as she cannot sustain this level of effort for more than a short period of time which reduces her workplace activity to below part time levels but would still be subject to interruption.

R. at 207. "The findings indicate [Plaintiff] tested into the LIGHT (unsustainable) physical demand category. The findings indicate she is below the (below 4 hours per day) [sic] part time workplace tolerance level" and "indicate [Plaintiff] is unable to return to work in her previous position or any other position." R. at 211.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

### III

### Summary of ALJ's Decision

On November 19, 2009, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of February 21, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform her past relevant work as a cashier; but (5) could perform other work in the national economy, such as a counter clerk, office helper, router, document preparer, order clerk, or addresser.  R. at 41-48.  The ALJ accordingly found that she was not disabled since February 21, 2008.  R. at 48.

In so finding, the ALJ found that Plaintiff had the following RFC:

[Plaintiff] has the [RFC] to perform a range of light work, and alternatively sedentary work, as defined in 20 CFR 416.967(b).  She can sit for a total of six hours in an eight-hour workday, and can stand and/or walk for a total of four hours in an eight-hour workday.  Granting her some benefit, she requires the option to alternate between sitting and standing such that not more than a half hour is required to either sit or stand at any one time period.  As a precautionary measure, she cannot climb ladders, ropes, or scaffolds; be exposed to hazardous heights or moving machinery; or be exposed to extreme temperature changes. She can occasionally climb stairs and ramps, balance, stoop, kneel, and crouch; she cannot crawl.  She cannot perform work that requires the use of push/pull controls with her legs.  She must avoid concentrated exposure to excessive vibration, humidity, or wetness.  Although there is no allegation of any mental impairment, she has a limited education, and therefore requires low-stress work, that is, work requiring no more than moderate attention, concentration, and persistence and pace for prolonged periods of time.  She has a moderate degree of pain and moderate limitations as to performing activities within a schedule, maintaining regular attendance for reliability purposes, and being punctual within customary tolerances; and as to completing a normal workday and workweek without an unreasonable length and number of rest periods.

R. at 42 (footnotes omitted); *see* R. at 46.  The ALJ found that Plaintiff "is obese, and therefore these considerations have been taken into account."  R. at 43.

Regarding Plaintiff's credibility, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 44.  The ALJ found that Plaintiff's "activities of daily living, including visiting family members' homes once or twice a week, using the computer on a daily basis, and occasionally going shopping, for example, are inconsistent with her allegation of total disability."  R. at 44.  The ALJ also noted that, "in May 2008, [Plaintiff] cooked her own meals, washed dishes, frequently cleaned her room, and could walk about three blocks without needing to rest."  R. at 44.  "Although [Plaintiff] has alleged drowsiness from the use of medication, the evidence of record similarly does not corroborate that allegation.  The assessed [RFC] for unskilled, low-stress work is, nevertheless, consistent with possible side effects of medication, including some fatigue."  R. at 45.  "However, the medical evidence clearly does not reveal any continuous, 12-month period of time during which [Plaintiff] was unable to engage in substantial gainful activity.  Her activities of daily living similarly evidence an adequate ability to function."  R. at 45.  The ALJ also considered Plaintiff's demeanor at the hearing, finding that,

> after carefully observing [Plaintiff] at the hearing, the undersigned further notes that her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations.  While these observations are just one of many factors that the undersigned has considered, she was able to answer questions quite clearly and thoroughly, despite her alleged severe pain.  Some slight weight has been given [Plaintiff's] hearing presentation.

R. at 45-46.

The ALJ also weighed the opinion evidence in the record and "assigned significant evidentiary weight to the above-referenced consultative and State Agency assessments, all of which indicate that [Plaintiff] must avoid prolonged standing and walking. The opinions are consistent with the medical evidence of record, including diagnostic testing completed in January 2008." R. at 46 (citations omitted).

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

### A.    ALJ's RFC Assessment

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p.  Pl.'s Mem. Supp. Summ. J. 8-11, ECF No. 19-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  In particular, she maintains that the ALJ "failed to include a narrative discussion setting forth an explanation of how the evidence supported each conclusion" and "failed to evaluate pertinent evidence."  *Id.* at 11.  Thus, according to Plaintiff, the ALJ's RFC assessment "fails to be supported by substantial evidence, is erroneous as a matter of law, and defies review."  *Id.*  The Commissioner asserts, on the other hand, that "the ALJ properly considered all the relevant evidence in determining [Plaintiff's] RFC and applied the [correct] legal standard in evaluating [her] credibility and the medical opinion evidence."  Def.'s Mem. Supp. Summ. J. 15, ECF No. 21-1.  As discussed further below, Plaintiff's argument is unavailing.[7]

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

[7] The Court notes that Plaintiff "presents a continuously recycled argument that this Court has rejected many times, suggesting that the ALJ failed to provide a function-by-function narrative discussion of her RFC."  *Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-2712, 2014 WL 457746, at *2 (D. Md. Jan. 31, 2014); *see Daniels v. Colvin*, Civil Action No. TMD 11-00599, 2013 WL 6528913, at *2 (D. Md. Dec. 11, 2013); *Ferguson v. Colvin*, Civil Action No. TMD 11-01193M, 2013 WL 4495791, at *2 (D. Md. Aug. 19, 2013); *George v. Astrue*, Civil Action No. TMD 10-2165, 2013 WL 877120, at *2-3 (D. Md. Mar. 7, 2013); *Vandervort v. Astrue*, Civil Action No. TMD 10-02671, 2013 WL 508987, at *2-3 (D. Md. Feb. 11, 2013); *Tucker v. Astrue*, Civil Action No. TMD 10-CV-1039, 2012 WL 1119518, at *2 n.1 (D. Md.

14

Plaintiff first maintains that,

> [w]hile the [ALJ] performed a function-by-function assessment of [her] abilities to perform basic work activities, [the ALJ] failed to set forth a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence, failed to discussed [her] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), failed to describe the maximum amount of each work-related activity [she] could perform based on the evidence available in the case record, and failed to explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . . . [The ALJ's RFC] assessment is necessarily based upon surmise and conjecture.

Pl.'s Mem. Supp. Summ. J. 10-11, ECF No. 19-1.

"In making an RFC finding, the ALJ is under an obligation to 'include a narrative discussion describing how the evidence supports each conclusion, *citing specific medical facts and non-medical evidence.*'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 695 (D. Md. 2013) (alteration in original) (quoting SSR 96-8p). "While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings." *Vandervort*, 2013 WL 508987, at *2.

Here, the Court has reviewed the ALJ's opinion and finds it to be thorough and detailed. Contrary to Plaintiff's argument, the ALJ did provide a narrative discussion to support his RFC assessment and "considered all symptoms and the extent to which these symptoms can

---

Apr. 2, 2012); *Finch ex rel. Finch v. Astrue*, Civil Action No. TMD 08-2706, 2012 WL 748383, at *3 (D. Md. Mar. 6, 2012); *Thomason v. Astrue*, Civil Action No. TMD 08-3403, 2012 WL 707003, at *2 (D. Md. Mar. 2, 2012); *Gorniewicz v. Astrue*, Civil Action No. TMD 08-3419, 2012 WL 32580, at *3 (D. Md. Jan. 5, 2012); *Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Dillon v. Astrue*, Civil Action No. TMD 08-2597TMD, 2011 WL 337334, at *3-4 (D. Md. Jan. 31, 2011); *Jefferson v. Astrue*, Civil Action No. TMD 09-225TMD, 2011 WL 121702, at *5 (D. Md. Jan. 13, 2011); *Broidy v. Astrue*, Civil Action No. TMD 09-1323, 2010 WL 4746151, at *4 (D. Md. Nov. 16, 2010); *Hamm v. Astrue*, Civil Action No. TMD 07-395, 2009 WL 3806785, at *3 (D. Md. Nov. 12, 2009); *Danson v. Astrue*, Civil Action No. TMD-07-1235, 2009 WL 2366295, at *2 (D. Md. July 30, 2009).

reasonably be accepted as consistent with the objective medical evidence and other evidence." R. at 42. The ALJ reviewed Plaintiff's reported activities of daily living (R. at 43) and her hearing testimony (R. at 43-44) to find her "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 44) and "inconsistent with her allegation of total disability" (R. at 44). The ALJ also found that the medical evidence of record did "not substantiate [Plaintiff's] allegations of disabling limitations" (R. at 44), discussing Dr. Noel's examination in January 2008 (R. at 44, 238, 242), Dr. Khan's examination in April 2008 (R. at 45, 214-18), the opinions of the state agency medical consultants (R. at 45, 220-27, 229-36), and Dr. Siekanowicz's examination in August 2009 (R. at 45, 245-48) before assigning "significant evidentiary weight to the above-referenced consultative and State Agency assessments, all of which indicated that [Plaintiff] must avoid prolonged standing and walking" (R. at 46). As the Commissioner points out, Plaintiff does not argue that, in assessing her RFC, the ALJ erred in considering her credibility or the medical opinions in this case, and so she has waived these arguments. *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002). Contrary to Plaintiff's contention, the Court need not guess at the basis for the ALJ's RFC assessment. *See Finch ex rel. Finch*, 2012 WL 748383, at *3 ("Plaintiff argues that the ALJ failed to set forth a narrative discussion setting forth how the evidence supports each finding within the RFC, failed to discuss the Plaintiff's ability to perform work-sustained activities in an ordinary work setting on a regular and continuing basis and failed to discuss the maximum amount of each work-related activity she was capable of performing. Plaintiff fails to set forth *any* specific argument and points to no medical evidence that would change the RFC.").

Plaintiff also argues that, in light of Dr. Noel's finding in July 2008 that she had a diminished range of motion in her left hip (R. at 238, 242), the ALJ failed to recognize that she "had problems with her left hip as well."  Pl.'s Mem. Supp. Summ. J. 11, ECF No. 19-1.  The ALJ noted, however, that Dr. Noel's examination revealed a "normal hip" (R. at 44, 238, 242), and Plaintiff does not explain how a contrary finding by the ALJ would change the RFC assessment.

Also to no avail does Plaintiff assert that the ALJ determined that she possessed the RFC to stand and/or walk for up to four hours in an eight-hour workday, but "failed to explain how he determined [her] ability to stand and/or walk."  Pl.'s Mem. Supp. Summ. J. 11, ECF No. 19-1 (citation omitted).  As noted above, the ALJ determined that Plaintiff could sit for six hours and stand or walk for four hours in an eight-hour workday, with a sit/stand option for no more than half an hour at a time.  R. at 42.  In doing so, the ALJ considered Plaintiff's credibility regarding the effects of her symptoms, as well as the medical evidence of record, and "assigned significant evidentiary weight" to the consultative and state agency assessments indicating that she must avoid prolonged standing and walking.  R. at 46.  Accordingly, Plaintiff's argument in this regard is without merit.  In short, substantial evidence supports the assessment of Plaintiff's RFC by the ALJ, who applied the correct legal standards in this case.

## B.    New Evidence

Plaintiff also maintains that the Appeals Council, in denying Plaintiff's request for review, failed to review properly the "new and material evidence" of the December 2009 functional capacities evaluation by Plaintiff's physical therapist, Mr. Martinez.  Pl.'s Mem. Supp. Summ. J. 5, ECF No. 19-1.  According to Plaintiff, "[t]his evidence was new and material, and relates to the period prior to the [ALJ's] decision.  Consequently, it was required to be reviewed

by the Appeals Council." *Id.* Defendant asserts, however, that the Appeals Council explained its consideration of Mr. Martinez's functional capacity evaluation and found his report to be inconsistent with Plaintiff's hearing testimony about her limitations. Def.'s Mem. Supp. Summ. J. 22-23, ECF No. 21-1. Thus, even in light of this new evidence, Defendant contends that substantial evidence supports the Commissioner's decision. *Id.* at 19-20.

"In reviewing decisions based on an application for [Title XVI] benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 416.1470(b); *cf.* 20 C.F.R. § 404.970(b) (in Title II cases, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."). Evidence is new within the meaning of 20 C.F.R. §§ 404.970(b) and 416.1470(b) if it is not duplicative or cumulative. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* When the Appeals Council denies review and incorporates new evidence into the administrative record, the Court reviews the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. *Id.* The Appeals Council is not required to articulate any findings when it considers new evidence and denies review, however. *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011).

Here, the Court is not convinced that the evidence of Mr. Martinez's functional capacities evaluation is material in the first instance under 20 C.F.R. § 416.1470(b) because it is not reasonably possible that the evidence would have changed the administrative outcome of this case. As Defendant points out, the functional capacities evaluation is from a physical therapist, who is not an "acceptable medical source" who can provide evidence in the form of a medical opinion to establish an impairment. *See* 20 C.F.R. §§ 416.913(a), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s) . . . ."); SSR 06-03p, 2006 WL 2329939, at *2 ("[O]nly 'acceptable medical sources' can be considered treating sources . . . , whose medical opinions may be entitled to controlling weight."). Thus, it is not reasonably likely that the ALJ would have weighed the opinion evidence differently had he reviewed Mr. Martinez's report. *See Craig*, 76 F.3d at 590 ("[A] physical therapist does not even qualify as an 'acceptable medical source' under the regulations, but rather would qualify only as an 'other source,' whose opinions are entitled to significantly less weight."). In any event, when it denied Plaintiff's request for review, the Appeals Council found the conclusions of Mr. Martinez's report to be inconsistent with Plaintiff's testimony at the hearing. R. at 2. Although Plaintiff maintains that "the conclusions reached by Mr. Martinez are consistent with [her] complaints" and support her allegations that her condition was worsening, Pl.'s Mem. Supp. Summ. J. 6, ECF No. 19-1, the ALJ found Plaintiff's complaints less than fully credible because, as discussed above, her reported daily living activities were inconsistent with her allegations of total disability, which she has not disputed. Accordingly, after considering the

record as a whole, including Mr. Martinez's functional capacities evaluation, the Court finds that substantial evidence supports the Commissioner's decision in this case.[8]

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF Nos. 17, 19) is **DENIED**.  The Commissioner's decision is **AFFIRMED**.  A separate order shall issue.

Date: March 26, 2014                             /s/

                                        Thomas M. DiGirolamo
                                        United States Magistrate Judge

---

[8] In requesting review by the Appeals Council, Plaintiff also submitted medical records from Prince George's Hospital Center.  R. at 2, 5, 249-97.  Because Plaintiff did not address whether these records are new and material, the Court has not discussed them here.  The Court nonetheless finds that the evidence in the record, including these hospital records, is still substantial to support the Commissioner's decision.